Our second case this morning is No. 24-1703, Consumeron, LLC v. Maplebear, Inc. Okay, Mr. Lerman. Good morning, and may it please the Court, Dan Lerman for Consumeron. The core invention here is a personal shopping agent, and the Board's decision misread the patents in several key respects. First, the Board erred in construing the acquisition request limitations. The only question on appeal is whether those terms encompass a request for an agent to simply pick up pre-purchased and pre-packaged goods. That's because the only reference here is PARC. That's the only reference asserted in the petitions and the only reference relied on by the Board. PARC is just a pickup and delivery service. A guy goes on his scooter, and he picks up goods that were ordered in advance and assembled and delivers them to the customer. Here, the claim language and specification all show that acquisition request does not include a request to just pick up goods. To begin with, the whole point of the invention is to allow the customer to see the goods and inspect them in real time, so the agent provides real-time images of the goods during the purchase process so the customer can inspect them remotely before their purchase. In PARC, the agent just simply picks up a pre-assembled bag of pre-purchased items. There is no remote inspection, and there is no customer confirmation followed by purchase. So PARC is the very problem the patent expressly sought to solve. Two of the patent's claim language expressly require the agent to purchase goods and not just pick them up. The 191 patent expressly recites a, quote, purchasing and delivery agent, and it says that the agent will, quote, immediately purchase the goods in connection with the acquisition request. The 835 patent also refers to the customer approval of the agent's purchase of the goods. Counsel, if we disagree with your construction of acquisition request, then would you agree that PARC discloses the relevant limitation? If you adopt the board's construction instead of ours, then I agree that PARC would disclose that, because there's no real dispute over the scope of PARC. The only dispute was over a claim construction issue, and in particular, whether the claims here encompass the mere pickup and pre-purchase of goods. Our view is that they don't. As noted, two of the patents expressly require purchase by the agent. The specific ---- But when you say the patents expressly require purchase by the agent, do you mean in the specification or the claims? Because, I mean, that's the very issue, right? The question is, what is the meaning of acquisition request? That's right, Your Honor. So for you to say it expressly requires it, I'm just ---- it seems to be that you're just giving the answer to the claim construction question without saying why. The answer is both, the claims and the specification. So with respect to the claims, the 191 patent says, quote, the agent will immediately purchase the goods in connection with the acquisition request. The 835 patent also refers to the purchase. That's the specification. No, no. Those are the claim. That's the claim language, Your Honor. Okay. So it says receiving through the at least one remote server a first acquisition request. And I understand you to be arguing that an acquisition request means that it's a purchase. It's a purchase request. It's a request to purchase, right? Well, our position is that an acquisition request is a request for this process where the agent goes, shops for the goods, you have the real-time inspection, approval, followed by a purchase or other transaction, after the customer approval. Now, the 191 patent expressly says the agent will, quote, immediately purchase the one or more goods in connection with completing the acquisition request. But even aside from the claim language, which we believe is important here, the specifications also show the same thing. Figure 3 shows that the agent arrives at a shopping location and then purchases a product after the customer approves the purchase. The spec expressly distinguishes between acquisition services and near pickup and purchase services. And it says when you have acquisition services, the invoice is for, quote, shopping services rendered. The petitions themselves all say, the Instacart petitions, all refer to the location where, quote, the agent is to purchase a product. And that's at A5298. And the spec is replete with references to the customer being able to request, quote, further shopping by the agent. It refers to a shopping request. It refers to the agent completing the transaction. But, counsel, what about the portions of the specification that talk about purchase or otherwise acquire a product? That's right. So that is the principal argument, I think, by the board below, at least with respect to the intrinsic evidence. Yes, but what's wrong with it? What's wrong with it is that otherwise means similar to. That's what the Supreme Court said in Fisher. And that's what this patent makes clear. But otherwise doesn't mean the same as. It doesn't mean the same. You're right, Your Honor. Our position is that the agent is completing the transaction. And that's what the patent says. It says the agent completes the transaction. The purchase is the canonical transaction. It is not the only one. For example, the patent expressly contemplates the customer having a pre-approved credit limit with the agent. It could also refer to a store account or some other sort of credit. In those cases, it is possible that someone could argue that the agent is not purchasing the item because he's using the pre-authorized credit limit, or he's using a coupon code, or he's using a two-for-one offer. Otherwise acquire is meant just to encompass these other types of transactions. But we know this because the patents use the word purchase. The specification refers repeatedly to the shopping request. And that's really the key here. The invention here is that the agent allows the customer to. But why does otherwise acquire require a transaction? I feel like that's what you just indicated to me. Well, because the specification refers to the agent completing the transaction. You can see this on page 264. And it says that the agent can complete the transaction. There is a provision in which the agent can just do pickup and delivery services. That's the pre-purchase embodiment. Right? But we know that the pickup services are different, because a specification And that's in the specification, right? Because the specification says that they're different. And the specification says that But how this is a concern is that it's a little bit difficult to determine. You know, people disclose different embodiments in their specification. And then their claims can be broader. They could encompass all embodiments. The problem you have here is that the claims are pretty broad. They're broader than just one embodiment. And they could be reasonably interpreted to include both those embodiments. And so that's our question is, why was that interpretation not reasonable when the broad language of the claim is acquisition request and the specification says language like purchase or otherwise acquire? Well, for three reasons. Two, the patents expressly say that the agent completes the purchase in connection with the acquisition request. The board did not address the fact that the 835 and the 19, at least with respect to the 835. The board did not address that in connection with its interpretation of acquisition request. But you have to You're talking about the claims now. Yeah. I'm talking about the claims. So that's two of the four patents expressly refer to purchasing. The key here is Some of the claims do. Excuse me? Some of the claims do. Two of them. Two of the four. Oh, sorry. Of the independent claims that I'm not following how it is that some claims referring to purchase means that all claims have to mean purchase. It certainly does in those claims, Your Honor. So at a minimum That's a different argument. That's not an argument about the meaning of acquisition. No. Oh, sorry. It says the purchase is made in connection with the acquisition request. To me, that makes crystal clear that that is the fulfillment of the acquisition request. As to Your Honor's question about the embodiment, you are correct that sometimes you can include embodiments, sometimes you can't. But the spec tells us that this is an alternative embodiment. It expressly says it's an alternative embodiment, and it says you're charged only for pickup services in that context, and you're not charged for the shopping services. So the spec makes abundantly clear that the core invention here is for a personal agent that shops for and delivers. They concede in their petitions that the agent makes the purchase. But what's the response to Judge Stone's question about how there could be a delta between what the spec says and the actual claim language? Well, again, one answer is the claim. Two of the claims require purchase. The second is the acquire. You have to read. This is Phyllis. You have to read the claims in the context of the entire patent, including the figures. Figure 3 refers to purchase product. Figure 3 makes clear that that 121 step is performed by the agent. Figure 3 refers to a shopping location. Figure 3 says print out the invoice, and that invoice is only for shopping services rendered. There is no delta here. The only question, just to go back to it, the only question is whether the pre-purchased and pre-assembled items by an agent on a moped like in Park. That is the only question in dispute with respect to the claim construction. And the patent expressly distinguishes that system. That is the prior art Internet shopping experience that the specification identifies as the problem and improves upon. If I could turn, then, to the purchasing requirements, because that is in two of the patents, Your Honor. In two of the patents expressly require purchasing. Instacart's principle argument below was that the customer approved his own purchase or that those are just non-limiting statements. And that's their argument on its own. There was no argument. The Board said it would have been obvious to modify Kim to do that, right? Correct, Your Honor. The Board said it would be obvious to combine Park and Kim. The Board expressly said that Kim teaches this. It says the combination of Park's teachings and Kim's teachings disclosed the agent making the purchase after approval. That was not the argument. And that is not a modification. Those are two different inquiries, Your Honor. The Board did not say a person of skill in the art would have been motivated to alter Kim. The Board expressed. Is Kim the primary reference? Yes. I mean, they did rely on Park as modified by Kim. They were relying on Park for the delivery agent. Kim is the reference that's relied on for the purchase aspect of this. Right. So it's modifying Park in view of Kim. It is modifying Park in view of Kim. But the Board expressly stated that Kim discloses this. It used the word Kim teaches this. Their expert testified, expressly testified that it's the customer who pays. And this is on page 9317. But isn't the question, like, whether substantial evidence supports the Board's reading of Kim? Yes. On this point. That is one of the questions. On this point you're making, one of the arguments you're making is that the Board, you know, there isn't substantial evidence to support the Board's reading of Kim. Right? That is one of the arguments we're saying is the Board ignored contradictory evidence. So the Board ignored their expert's own testimony that said the customer. Right. That is one argument. That's part of the substantial evidence inquiry. It is. It's also a State Farm inquiry. It's also, as Your Honor suggests, unsupported by substantial evidence if you ignore contradictory evidence. So that is a substantial evidence question. But it is a question about the Board ignoring the key claim language. Also, the other side does not contend that Kim, in fact, teaches this. They do not defend that on appeal. They say that's not what the Board held. So that is all. They're not saying that Kim, in fact, teaches or discloses this. That was not the argument below. Their argument here is that it would somehow have been obvious perhaps to modify. But again, that is not what the Board held. So this Court cannot affirm on a factual determination. That was not made by the Board. There was no dispute below that Kim does it. Where is what the Board said about this webpage? If you look at page 59 of the appendix, it says in the footnote, we find that the combination of Park and Kim teaches an agent sending the image. If you look at page 19, it refers to Park modifying, sorry, modifying Park with Kim's teaching so that the agent purchases the goods after the purchase. The only question here was the combination of Park's delivery agent with Kim's approval. And we know that Kim has an approval because it says it has an approval. When you refer to page 19 in appendix page 58? Yeah. Sorry. Yeah, 19 of the decision appendix 58 as an exemplar. At the top of page 59, A59, the Board is saying the combination teaches or suggests the agent purchasing, right? That is correct, Your Honor. Or suggests. So two points. One is if you read the footnote, it says because we find the combination teaches. So it is saying what it meant there. But in any event, suggestion isn't. Isn't that referring back to their findings earlier in the opinion? For example, page A19, as Judge Cunningham directed you earlier? I think it's referring to the whole thing. But let me just, if I can answer Judge Steig's question. Suggest doesn't mean modify Kim. Suggest just means a person is filling the art with you. Can you say on 19, on 58, it says this evidence further supports it would have been obvious to modify Park with Kim's teaching such that the agent purchases the goods. Well, it doesn't say that. It says that the customer could confirm the purchase. But it still says modify Park with Kim. It doesn't say modify Kim. The Board understood Kim to be. It's talking about the combination. What? It is a combination. It's talking about the combination. That's correct. But what it didn't say is that there's a modification using ordinary creativity. This Court has made clear that when you're relying on modifying a reference, as opposed to modifying one of the. I'm sorry. You've got to stop for a second. What about at the top of page A20? That's the first sentence. No. That's not relying on a modification. It's relying on how they read Kim and the figuring. Right. It is reading Kim to disclose an agent purchasing. That is correct. That is what our position of what the Board held. But you wanted to say at least suggest. Yeah. That's right, Your Honor. But suggest just means a person of ordinary skill in the art would read this to disclose and teach that. But in any event, we again know that Kim doesn't have. This is not rocket science. Purchasing agents were well known, right? No. This is an invention. The key is not rocket science. It's a personal delivery agent. But purchasing agents were well known, right? No, they weren't. This is a distinction from the prior art, Your Honor. The difference is this interactive approval mechanism where the shopper is inspecting it in real time, Your Honor, and is able to say I do like this, I don't like this, go to a different location and find me a more suitable product. That is not in the prior art. That is not in Park, because Park is just a pickup. And it's not in Kim. Kim has no suggestion of a purchase at all. And it doesn't suggest the agent were. Oh, I'm sorry, Your Honor. Okay. We'll give you two minutes. Thank you. Ms. Oliver. Go ahead. Good morning. And may it please the Court, Angela Oliver on behalf of Instacart. I'll address two issues unless the Court prefers otherwise. One is the claim construction issue that we heard this morning and the purchase language in the other two patents. I think one thing to really focus on, would you mind starting with this point about  Sure. And specifically what the Board's finding was with respect to whether Kim teaches acquiring or purchasing the product by an agent after the customer inspects the image, that finding that's at page A20, and whether that's supported by substantial evidence or not. Yes, of course. We can start there. And, yes, it is supported by substantial evidence. So I think at A20, as Your Honor pointed out, also at A58, just right before that, the sentence before this, the Board makes clear that this is an obviousness analysis. The Board specifically says it would have been obvious to modify Park with Kim's teachings such that the agent purchases the goods. So what is the substantial evidence, and how would you address the, what I heard to be the argument that this was not a theory that you suggested? Sure. So let me first start with the second question. And I think in this case, there are two parts to this answer. There are two patents. In the 191, this was very clearly raised in the petition. And we can see that. That is at Appendix 16489. If it's helpful, we can turn there. That is, it might be helpful. Let me just pull that up. It's at 16489. This is the volume 3. Okay. So this is the 191 petition. And in the first full sentence, on the top of that page, the petition says, The customer places an order of a product to a delivery service provider rather than placing the order with the seller in Kim. So it would have been obvious that the delivery service provider makes the purchase and does not do so until the customer confirms the image. And we cite Paragraph 123 of Dr. Hu's declaration. And if you'll turn with me to the Board's decision in the 191, this is at Appendix 173. This is the exact paragraph of testimony that the Board cites in that decision. Again, Appendix 173. And the Board here says we credit Dr. Hu's testimony. And then they cite 123. And then they quote this paragraph of testimony, which says, smack in the middle of it, It would have been obvious that the delivery service provider makes the purchase and does not do so until the customer confirms the image. Otherwise, the efficiencies gained by requiring customer confirmation will be negated. You'd have to purchase and then return the goods. So there's some reasoning explaining why it would make sense to save the purchase for later for the agent to do that. So that was squarely raised in the petition in the 191, and that's fully supported by substantial evidence. In the 835 case, this argument was raised in the reply, because the language there is a little different. As we've argued elsewhere in our brief, the 835 should be read to just include the customer approving their own purchase. And so when in the patent owner response in the 835, it was argued by Consumeron that that actually required the agent to make a purchase, then we directly responded to that in our reply and said, no, even if you think that, that would still be obvious. And we used essentially this same testimony, and that was in the reply brief and our expert's reply in that case. So it was fairly presented. There's been no argument here that that was improper reply evidence or something like that. And the Board in the 835 then discussed this expert testimony, paragraph 69 of Dr. Hu's reply declaration is helpful, paragraph 56 of the original declaration is helpful, and there's additional evidence as well. So we think this was fairly presented and fully supported by substantial evidence. Posing counsel spent quite a bit of time relying on figure 3 in particular in the specification for an argument to support that you need to maybe more narrowly read or otherwise acquire. Do you have a response to that? Yes. And so this goes back to the claim construction issue. So I'll turn to that. So what was missed with respect to the discussion of figure 3 is that in figure 3 itself, step 121 in the picture says purchase product. But when you turn to the text that is describing that exact step, step 121, it says if the product is approved, the delivery agent will be. Can you give me an appendix page so I can do it? I'm sorry. Appendix 264. Appendix 264. And it's column 7. And this is line 56 through 59. And so here, this is corresponding to step 121. If the product is approved, the delivery agent will purchase or otherwise acquire the product on behalf of the customer at step 121. And that's critical language right there because this or otherwise acquire language in this sentence was added by the applicant during prosecution when going from the provisional to the non-provisional application. So this is significant language that bears on how the applicant understood this acquisition term to be used. It's not limited to purchasing. The patent is not limited to purchasing the specification or the claims. And acquisition means something broader than that. Now, if you go to the next column in column 8, you'll see around line 15, this is where the prepay option is also disclosed. And this is described in the context of this figure 3 discussion. So we just talked about step 121. Now we're talking about payment options that are disclosed in this process flow. And then later on in column 9, you'll see it finish out talking about figure 3, steps 124 or 125. But the point is, right in the middle of this discussion is where the patentee talks about these different payment options. And there's multiple disclosed. Certainly the agent can pay. The customer can pay directly in advance. And then later in column 10, we see there's an option where there's no payment at all, where we're picking up, ordering free goods. So certainly there's no purchase there. All of these different ideas are encompassed in the idea of an acquisition request. These are all types of acquisition. And so the patentee chose to claim these claims broadly, and the Court should affirm the Board's construction of this. Unless the Court has further questions on claim construction, I'll just conclude with one final point. We heard a lot this morning about how the invention here was about this customer inspecting a product, and that was the advance over the prior art. And that's exactly what we've shown with our combination. Outside of this discussion about acquisition request, there are other limitations in these claims that go through those reportedly inventive steps about sending an image of the product. All of that is disclosed and rendered obvious by their other claims that are no longer at dispute, in dispute on appeal. Kim basically teaches us a very similar process where you send an image and the customer inspects the process. So there is no concern here about that not being part of the combination. Okay. Unless the Court has questions, we ask the Court to affirm. Okay. Thank you. Just one more. Two points, Your Honors, and I'll pick up on what was just said. The acquisition request only relies on PARC. The only question is whether mere pickup alone reads on to that limitation because that's what the Board held. So that is the only question here. And there's no dispute in PARC. There is no inspection or approval. On this point with respect to Figure 3, this alternative embodiment, pre-purchase embodiment, is not part of Figure 3. That paragraph that is cited expressly says that if the acquisition request cannot be completed, then there's a separate process, which is pickup and delivery services. We know this because the specification expressly says that is different from acquisition services. Acquisition services are one thing, and in that case you are billed for, quote, the shopping services rendered. The pickup and delivery services are another, and you're billed only for pickup and delivery. The spec makes clear that that is outside the scope of Figure 3. On Kim and the purchasing limitations, which is a different limitation, and that involves a combination of PARC and Kim, their expert, Hugh, expressly testified that in Kim it is the customer making the purchase. He said the customer makes it by cash or the customer pays by credit. That contradicts the board's finding that in Kim it is the agent making the purchase. At a minimum, the board had to confront that evidence, which we cited, and the board failed to do so. And so even though Kim does have an approval step, it is not, it is different in sequence and it is different by agency. The purchase in that case is made before the customer just inspects. The whole point of Kim is just to enhance the reliability of the delivery services. So maybe you get to give an up or down vote right before it's dropped at the door. But second, there is nothing in Kim that talks about an agent purchasing. Nobody found that. They said in their opening brief perhaps it would have been obvious to modify, but that is not what the board held, and they don't say that on appeal. There is no dispute on appeal that Kim does not teach or disclose an agent making a purchase after approval.  Thank you, Mr. Warren. We thank both counsel. The case is submitted.